**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------x

CARPET ET CETERA, INC.,          :

                    PLAINTIFF,   :

                        :       06 CV 6993 (BSJ)

           v.                    :

                        :       <u>**Opinion and Order**</u>

MICHAEL J. FORDE AND PAUL O'BRIEN,    :
AS TRUSTEES OF NEW YORK CITY DISTRICT  :
COUNCIL OF CARPENTERS WELFARE FUND,    :
NEW YORK CITY DISTRICT COUNCIL OF      :
CARPENTERS VACATION FUND, NEW YORK     :
CITY DISTRICT COUNCIL OF CARPENTERS    :
APPRENTICESHIP, JOURNEYMAN RETRAINING  :
EDUCATIONAL AND INDUSTRY FUND, NEW     :
YORK CITY DISTRICT COUNCIL OF          :
CARPENTERS CHARITY FUND AND NEW YORK   :
CITY AND VICINITY CARPENTERS           :
LABOR-MANAGEMENT CORPORATION,          :
                 DEFENDANTS    :

----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**


    Plaintiff Carpet et Cetera ("Carpet") filed this Complaint

seeking an order to stay an arbitration demand made by

Defendants Michael J. Forde and Paul O'Brien, as Trustees of the

New York District Council of Carpenters Pension Fund, New York

City District Council of Carpenters Welfare Fund, New York City

District Council of Carpenters Vacation Fund, New York City

District Council of Carpenters Apprenticeship, Journeyman

Retraining Educational and Industry Fund, New York City District

Council of Carpenters Charity Fund, and New York City and

Vicinity Carpenters Labor-Management Corporation (jointly

1

referred to as the "Benefit Funds").  Defendants have cross-
moved to compel arbitration pursuant to the Federal Arbitration
Act, 9 U.S.C. § 4.  For the reasons set forth below, Plaintiff's
motion to stay arbitration is DENIED and Defendants' motion to
compel arbitration is GRANTED.


## Background

Plaintiff Carpet et Cetera is a retailer and installer of
carpeting and other flooring.  On March 18, 2005, Carpet entered
into a collective bargaining agreement, known as the Independent
Resilient Floor Coverers Agreement ("Collective Bargaining
Agreement" or "Agreement"), with the District Council of New
York and Vicinity of the United Brotherhood of Carpenters and
Joiners of America ("Carpenters Union" or "Union").  Article XIV
of the Agreement contains a broad arbitration clause that
provides that "[a]ll complaints, disputes and differences
concerning the application, interpretation, effect, purpose or
breach of any term or condition of this Agreement, or in the
event there shall exist any claim, demand, dispute or
controversy between the parties hereto," not resolved by
negotiation, "shall be submitted to arbitration."  (Keller
Decl., Ex. 2, Art. XIV.)  In addition, Article XIV, Section 3
states that "[i]t is the intent of the parties hereto that all
disputes between them, both within and outside of the Agreement,

shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted." (<u>Id.</u>)

Pursuant to Article XI of the Agreement, Plaintiff was required to make monetary contributions to the Benefit Funds for each hour worked by its covered employees. (See Keller Decl., Ex. 2, Art. XI, § A.)  Article XI also provides that upon request employers are required to produce their books and records to the Trustees of the Benefit Funds or their designated auditing representative, to enable the auditor to "ascertain and independently verify that the proper contributions . . . have been paid." (<u>Id.</u> § B.)  Failure to "furnish the proper records when requested, for the purpose of completing an audit" is a violation of the Agreement.  (<u>Id.</u> § A.)  Article XI also gives either party the right to seek arbitration "[s]hould any dispute or disagreement arise between the parties hereto, or between the Union and any Employer-member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due . . ." (<u>Id.</u> § H.)  Lastly, Article XI, Section G recognizes the right of the Benefit Funds to commence legal proceedings before a judge or arbitrator to enforce obligations as to the funds.  (<u>Id.</u> § G.)

Article XVII provides that the Agreement "shall continue until July 1, 2006 and shall be renewed automatically for one year intervals thereafter unless notice to the other . . . has

been provided by either party . . . no more than ninety (90)
days nor no less than sixty (60) days before the contract
expiration that such party seeks to negotiate a new contract or
modify or amend this Agreement through negotiations." (Id. Art.
XVII.)

Plaintiff contends that the Carpenters Union materially
breached and substantively repudiated the Agreement in February
2006.  The Carpenters Union is not a party to this litigation.[1]
According to Carpet, the Union refused to provide workers for
Carpenters Millennium Hilton project and demanded that Carpet
provide an undertaking to guarantee payment of fringe benefits —
a request which Carpet did not honor.  Carpet prepaid the fringe
benefits for two men and the Union referred two workers.  After
two days, the Union refused to refer any more members to Carpet,
and ordered its members not to report for work at Carpet's
Millennium Hilton project site.  Plaintiff asserts that on or
about February 23, 2006, it contacted the Carpenters Union to
request that it refer workers to Plaintiff for the Millennium
Hilton project.  According to Plaintiff, in response to its
request a Carpenters Union business agent informed Carpet that
the Union was rescinding the Agreement and would not refer any

---

[1] Because the Carpenters Union is not a party to this litigation and neither
party has submitted any documentary evidence describing the Union's version
of the events that took place in February 2006, the Court's description is
drawn solely from Plaintiff's papers.

members to Plaintiff.  By letter dated April 17, 2006 Carpet notified the Carpenters Union of its intent to modify or terminate the Agreement.

Some time prior to April 7, 2006, Defendants requested to audit Plaintiff's books and records, and Plaintiff refused.  By letter dated April 7, 2006 the Benefit Funds notified Carpet that their refusal to allow the auditing of their books and records audited for the period March 18, 2005 "to date" was in direct violation of the Collective Bargaining Agreement and "[u]nless permission is given within seven (7) days for an audit, either arbitration will be scheduled or a suit will be filed against your company in federal court seeking an order for your company to comply with the audit."  (Keller Decl., Ex. 6.) On April 19, 2006 Defendants sent Carpet a Notice of Intention to Arbitrate.  Carpet claims that it sought to amicably resolve the issue by offering an audit for the period March 18, 2005 to February 22, 2006, but Defendants' auditors repeatedly cancelled the scheduled audit.  Defendants do not respond to this allegation.  Both parties agree that the audit never took place, and on August 22, 2006 Defendants served a new Notice to Arbitrate seeking to compel Carpet to permit the Benefit Funds to "conduct an audit of its books and records for the period 3/18/2005 through date to determine whether is in (sic)

compliance with its obligation to contribute to the Funds."
(Keller Decl, Ex. 1.)


## Discussion

Carpet seeks this stay of arbitration on the grounds that
the Carpenters Union materially breached and substantively
repudiated the Collective Bargaining Agreement in February 2006,
when it refused to refer members to Carpet and ordered its
members not to report for work at Carpet's Millenium Hilton
Project site.  In addition, Plaintiff claims that in response to
the Union's conduct, it sent a letter dated April 17, 2006 to
the Carpenters Union terminating the Agreement.  Accordingly,
Plaintiff argues it cannot be bound to the arbitration
provisions in a terminated contract.[2]

### A. The Carpenters Union's Alleged Repudiation

Plaintiff's main argument is that the Agreement "with the
Carpenters Union was no longer in effect when defendants
demanded arbitration because the Agreement had been repudiated
and rescinded by the Carpenters Union and terminated by the

---

[2] The Agreement at issue contains two arbitration provisions.  Under Article
XI, Carpet was required to arbitrate "any dispute or disagreement . . .
concerning any claim arising from payments to the Fund."  (Keller Dec., Ex.
2, Art. XI, § H.)  Under the arbitration clause in Article XIV, the Grievance
Procedure section, Carpet was required to arbitrate "all complaints, disputes
and differences concerning . . . breach of any term or condition of this
Agreement."  (Ex. 2, Art. XIV, § 1.)  Therefore, if Carpet believes the
Union's conduct constitutes a material breach, the terms of the Agreement
require it to arbitrate this claim.

Company." (Pl. Memorandum of Law in Support of its Motion to
Stay Arbitration 5.) Plaintiff asserts that the issue before
the Court is whether "a collective bargaining agreement ever
existed or if one ceased to exist." (Id. at 6.) The Court
disagrees. As evidenced by Plaintiff's own Exhibit 2, Carpet
was a signatory employer to the Collective Bargaining Agreement,
which contained two arbitration provisions; therefore, there is
no question that there was a valid agreement pursuant to which
Carpet was obligated to arbitrate claims of a material breach of
the Agreement or issues arising out of its contributions to the
Benefit Funds. Thus, the issue in this case is whether the
Union's conduct in February 2006 repudiated the Agreement and
thereby discharged Carpet's obligation to arbitrate. As an
initial matter the Court must decide whether the Carpenters
Union's alleged repudiation is a "question of arbitrability" to
be decided by the Court unless the parties have clearly agreed
otherwise, or whether it is a "gateway matter presumptively
reserved for the arbitrator's resolution." See Mulvaney
Mechanical v. Sheet Metals Internat'l, 351 F.3d 43,45 (2d Cir.
2003).

In Mulvaney Mechanical v. Sheet Metals International, 351
F.3d 43 (2d Cir. 2003), the Second Circuit held that "the issue
of repudiation most closely resembles the defenses to
arbitrability such as waiver, estoppel, or delay that the

7

Supreme Court [in <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 123, 124 S. Ct. 588 (2002)] listed as questions properly decided by arbitrators." <u>Mulvaney</u>, 351 F.3d at 46.  The <u>Mulvaney</u> court acknowledged that "the issue of the union's alleged repudiation . . . raises questions about the ongoing validity of the underlying contract and therefore presents a substantive challenge to the authority of the arbitrator." <u>Id.</u> at 46.  Nevertheless, the court concluded that an alleged repudiation "presumes the one-time existence of a valid contract and goes to the enforcement of that contract.  Upon repudiation, a contract does not cease to exist, but merely becomes voidable, and the non-repudiating party may enforce the contract or rescind it." <u>Id.</u> (citing 13 Richard A. Lord, <u>Willinston on Contracts</u> § 39:37, at 663-68 (4th ed. 2000)).  Therefore, the court concluded that determining whether the union repudiated the contract was a matter reserved for the arbitrators.  <u>Id.</u>

     In the present case, the court finds that Carpet was a signatory to a collective bargaining agreement containing a broadly worded arbitration provision.  The "Grievance Procedure" in Article XIV of the Collective Bargaining Agreement states that

          Section 1. All complaints, disputes, and differences
          concerning the application, interpretation, effect,
          purpose or breach of any term or condition of this
          Agreement, or in the event here shall exist any claim,
          demand, dispute or controversy between the parties

hereto, . . .  the parties shall first attempt to
settle and adjust such dispute, claim, demand, or
controversy by negotiation.

Section 2. Any grievance not resolved shall be
submitted to arbitration.

(Keller Dec., Ex. 2, Art. XIV.)

Pursuant to this broadly worded grievance arbitration
clause, the issue of whether Carpet repudiated the Agreement is
itself subject to the arbitration clause.  Furthermore, as
stated by the Mulvaney court, the Union's alleged repudiation
does not void contract and automatically discharge Carpet from
its obligation to arbitrate.  Mulvaney, 351 F.3d at 46.
Instead, upon repudiation the contract is still in existence but
is voidable by the non-repudiating party.  Thus, the issue is
"the ongoing enforceability of an agreement that the parties had
unquestionably reached."  Id.  Accordingly, the Court concludes
that determining whether the Union's conduct amounted to a
complete repudiation of the Agreement such that Carpet was
excused from its obligations to arbitrate, is a question
properly answered by the arbitrators.

Plaintiff attempts to distinguish this case from Mulvaney
by asserting that the issue here is not simply whether the Union
repudiated the Agreement, but whether the contract was rendered
void as a result of "repudiation plus other conduct," which

9

revealed the intent of the parties not to rely on the Agreement.[3]
(Pl. Reply Memorandum at 2.)  However, the means by which an
agreement was repudiated does not transform the issue from one
which is properly decided by the arbitrators to one reserved for
the courts.  According to the Restatement (Second) of Contracts
a repudiation can be either a statement or a voluntary
affirmative act indicating that the party will commit a breach.
Restatement (Second) of Contracts § 250 (1981) ("A repudiation
is (a) a statement by the obligor or obligee indicating that the
obligor will commit a breach that would itself give the obligee
a claim for damages for total breach under § 243, or (b) a
voluntary affirmative act which renders the obligor unable or
apparently unable to perform without such a breach." (emphasis
added)).  Therefore, the Court concludes that whether the
alleged repudiation is by a simple statement or by words and
conduct indicating that the party does not intend to perform the
contract, the rule enunciated in Mulvaney still applies:  The

---

[3] The Carpenter Union's alleged repudiation is a disputed issue of fact.
Plaintiff claims that the Union repudiated the Agreement in February 2006 by
refusing to refer members to Carpet, ordering its members not to report to
Carpet's Millennium Hilton project site, and disclaiming its interest in the
agreement.  (Compl. ¶¶ 11-12.)  Defendants are trustees of the Benefit Funds
and do not represent the Union, yet in their answer they have denied the
Union's repudiation of the Agreement and the Union's receipt of the letter
dated April 17, 2006.  Answer ¶¶ 11, 13.  Defendants aver that the removal of
workers form the project site was not a repudiation because it was expressly
provided for in the Collective Bargaining Agreement.  Answer ¶ 12.  Pursuant
to the Court's holding, this is an issue to be resolved by the arbitrators.

question of whether an alleged contract has been repudiated is to be decided by the arbitrators.

### B. Carpet et Cetera's Alleged Termination

Plaintiff also argues that the Court should stay the arbitration because Plaintiff terminated the Agreement by its letter dated April 17, 2006, in which Plaintiff gave notice to the Carpenters Union that it was seeking to modify or terminate the Agreement.  Plaintiff argues that this letter formally terminated the Agreement pursuant to Section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158.  Under Section 8(d) of the National Labor Relations Act, written notice served upon another party to a collective bargaining agreement does not automatically terminate the agreement.  See 29 U.S.C. § 158 (2000).  Section 8(d) provides that a collective bargaining agreement "continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later."  Id.  Thus, service of the letter upon the Carpenters Union did not automatically terminate the agreement.  Moreover, Plaintiff presents no evidence that it fulfilled the other requirements of Section 8(d).[4]  By shifting

_____

[4] Section 8(d) of the National Labor Relations Act, a party seeking to terminate a collective bargaining agreement, must also offer "to meet and

the emphasis from the Carpenters Union's conduct to its own

termination, Carpet seeks to bring this case within the rule

that questions of termination are presumptively reserved for the

courts because "[t]he question of whether [a party's] conduct

terminated the agreement is akin to the question of whether a

binding agreement to arbitrate exists at all." Mulvaney, 351

F.3d at 45.  The Court finds that Carpet's partitioning of the

events in this way is a red herring.  As stated above, Carpet's

April 17, 2006 letter did not automatically terminate the

agreement.  Whether the Union's alleged repudiation, plus

Carpet's letter terminated the agreement is an open question.

The alleged repudiation and the April 17, 2006 letter must be

viewed as a series of events in response to each other.

Accordingly, the Court finds that determining the effect of

Plaintiff's letter in response to the Union's conduct is an

issue to be decided by the arbitrators.

Even assuming the Collective Bargaining Agreement was

terminated, Carpet can still be obligated to arbitrate claims

"arising under" the terminated Agreement.  In Nolde Brothers

Inc. v. Bakery Workers, 430 U.S. 243, 97 S. Ct. 1067 (1977), a

union brought suit under § 301 of the Labor Management Relations

Act (LMRA), 29 U.S.C. § 185, to compel the employer to submit to

confer with the other party for the purpose of negotiating a new contract,"
and notify "the Federal Mediation and Conciliation Service within thirty days
after such notice of the existence of a dispute." 29 U.S.C. § 158.

arbitration.  The employer in Nolde ceased operations four days
after the termination of a collective bargaining agreement, and
although the employer settled the employee wage claims, he
refused to pay severance called for in the agreement.  In
addition, the employer refused to submit the dispute to
arbitration.  The Supreme Court held that "whatever the outcome,
the resolution of the claim hinges on the interpretation
ultimately given the contract clause providing for severance
pay.  The dispute, therefore, although arising after the
expiration of the collective-bargaining contract, clearly arises
under that contract."  Nolde, 430 U.S. at 249, 97 S. Ct. at 1071
(emphasis in original).  The Court thus found that the employer
had to submit to arbitration.  In reaching this conclusion, the
Court stated that "the parties' failure to exclude from
arbitrability contract disputes arising after termination, far
from manifesting an intent to have arbitration obligations cease
with the agreement, affords a basis for concluding that they
intended to arbitrate all grievances arising out of the
contractual relationship. . . . [W]here the dispute is over a
provision of the expired agreement, the presumptions favoring
arbitrability must be negated expressly or by clear
implication."  Id. at 255.  The collective bargaining agreement
at issue in the present case contains a broadly worded
arbitration provision that similarly fails to exclude from

arbitration disputes arising after the termination of the
agreement.  Thus, the Court finds that the parties "intended to
arbitrate all grievances arising out of the contractual
relationship."  Id.

In Litton Financial Printing Division v. National Labor
Relations Board, 501 U.S. 190, 111 S. Ct. 2215 (1991), the
Supreme Court reaffirmed its holding in Nolde.  In Litton the
Court held that layoffs, which took place after the collective
bargaining agreement had expired, did not "arise under" and were
thus not covered by the collective bargaining agreement.  But in
reaching this conclusion, the Litton Court explained that post-
expiration grievances arise under a collective bargaining
agreement, and are therefore arbitrable where: 1. the dispute
"involves facts and occurrences that arose before termination;"
2. "where an action taken after expiration infringes a right
that accrued or vested under the agreement;" or 3. "where, under
normal principles of contract interpretation, the disputed
contractual right survives expiration of the agreement."
Litton, 501 U.S. 205-06, 111 S. Ct. 2225.  In the case at bar,
the demand for arbitration arises out of Plaintiff's obligation
to permit the Benefit Funds to audit Carpet's books and records.
The Benefit Funds' request pre-dates the April 17, 2006 letter
by which Plaintiff claims it terminated the contract.  The
Benefit Funds' letter dated April 7, 2006, explained to Carpet

that their refusal to turn over their books and records was in violation of the Agreement, and if they failed to permit the audit of their books within seven days the Benefit Funds would either schedule arbitration or would commence suit in federal court seeking an order for Carpet to comply with the audit. (Pl. Ex. 5.)  Thus, the Court finds that because the dispute involves facts and occurrences that arose before termination, Carpet et Cetera's obligation to arbitrate survives the alleged contract termination.

Plaintiff argues that the Benefit Funds' request to audit Plaintiff's books and records post-dates the Union's alleged repudiation of the agreement; therefore, Carpet is not required to honor such a request.  Pursuant to the Court's holding above, that is an argument to be presented to the arbitrators.  Even if the Union's conduct amounts to a repudiation of the contract, "upon repudiation, a contract does not cease to exist, but merely becomes voidable, and the non-repudiating party may enforce the contract or rescind it." Mulvaney, 351 F.3d at 46. Therefore, the Court finds that at the time the Union made its request the Agreement was not yet terminated, thus the Benefit Funds' request "arose under" the Agreement and any dispute concerning such a request is to be resolved through arbitration.

## Conclusion

15

For the foregoing reasons, Plaintiffs motion to stay the arbitration is DENIED and Defendants motion to compel Carpet et Cetera to arbitrate, pursuant to the Court's power under the Federal Arbitration Act, 9 U.S.C. § 4, is hereby GRANTED.

The Clerk of Court is hereby directed to CLOSE this case.

**SO ORDERED:**

**BARBARA S. JONES**

**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
October /6, 2006

16